UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

BLANCA HERRERA CASTRO,                                              Petitioner,

v.                                                    Civil Action No. 4:26-cv-47-RGJ

JASON WOOSLEY, et al.,                                            Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Blanca Herrera Castro's Writ of Habeas Corpus. [DE 1]. Respondents responded on February 3, 2026. [DE 7]. Petitioner replied on February 6, 2026. [DE 10]. Petitioner also filed a notice of supplemental authority. [DE 12]. The parties agreed that no evidentiary hearing is necessary. [DE 8; DE 9]. This matter is ripe for adjudication. For the reasons below, this Court **GRANTS** the Petition for Writ of Habeas Corpus. [DE 1].

## I.      Background

Petitioner Blanca Herrera Castro ("Castro") is a 33-year-old native and citizen of Nicaragua. [DE 7-1 at 37]. In June 2021, Castro entered the United States without inspection. [DE 7 at 28]. Although entering without inspection, Castro encountered border patrol agents shortly thereafter near Hidalgo, Texas. [DE 7-1 at 37-38]. Castro alleged a fear of returning to Nicaragua and underwent a credible fear interview. [DE 7 at 29]. She received a negative determination and was ordered removed from the United States. [*Id.*]. On September 9, 2021, she was deported to Nicaragua. [*Id.*]. On February 27, 2022, Castro again entered the United States without inspection and encountered Border Patrol shortly thereafter. [*Id.*]. Again, Castro alleged a fear of return to Nicaragua. [*Id.*]. On July 22, 2022, an Immigration Court granted Castro "withholding only" relief from being removed to Nicaragua. [*Id.*]. She was subsequently released on an Order of Supervision ("OSUP"). [*Id.*]. Her OSUP had certain preconditions, such as required periodic check-ins with

Immigration and Customs Enforcement ("ICE"). [*Id.*]. Since her release, she had been living and working in Milwaukee, Wisconsin. [DE 7-1 at 37].

On December 11, 2025, Castro attended a required check-in with ICE. [DE 1 at 3]. At her check-in, however, she was detained and, shortly thereafter, was provided with an order cancelling her OSUP. [*Id.* at 3-4]. ICE concedes that it did not provide any further reasoning or notice, other than the boiler plate order of revocation regarding Castro's OSUP. [DE 7 at 32]. Upon detention, she was transferred to Grayson County Jail in the Western District of Kentucky. [*Id.*].

Castro seeks a Writ of Habeas Corpus alleging that the revocation of her OSUP was in violation of the *Accardi* doctrine or that her prolonged detention violates her due process rights pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). [DE 1 at 4-5]. The United States contends that Castro is both properly detained pursuant to the *Zadyvdas* standard and that her OSUP was properly revoked. [DE 7 at 31-32].

## II.    Discussion[1]

### A.    Relevant Immigration Framework

Both parties agree that Castro is currently detained pursuant to 8 U.S.C. § 1231(a). [DE 7 at 30; DE 10 at 32]. Section 1231 is titled "Detention and removal of aliens ordered removed." Section 1231 generally governs the process for when noncitizens are detained, issued an order of removal, and subject to removal and supervision. To help effectuate this statute, regulations were promulgated under Section 1231. Those regulations are primarily found at 8 C.F.R. § 241.4, and a cross-reference in 8 C.F.R. § 241.13. When interpreting a statute and its regulations, it is a core

---

[1] Neither party asserted any jurisdiction-related arguments. However, the Court has analyzed jurisdiction of remedies in similar circumstances, such as *Edahi v. Lewis*, 2025 WL 3466682, at *2-3 (W.D. Ky. Nov. 27, 2025) and incorporates its reasoning into this opinion. Neither party asserted any exhaustion-related arguments and no applicable statute or rule mandates exhaustion. However, because many decisions in similar cases by district courts within the Sixth Circuit discuss this principal, the Court incorporates its analysis on exhaustion of remedies from a previous case, *Edahi,* 2025 WL 3466682, at *3, and the Court waives the exhaustion requirement for the same reasons.

maxim of statutory interpretation that "[w]e generally avoid construing one provision in a statute so as to suspend or supersede another provision. To avoid 'denying effect to a part of a statute,' we accord 'significance and effect to every word.'" *United States v. Giraud*, *Giraud*, 795 F. Supp. 3d 560, 581 (D. N.J. 2025) (quoting *Rake v. Wade*, 508 U.S. 464, 471-72 (1993)).

8 C.F.R. § 241.4, which is titled, "Continued detention of inadmissible, criminal, and other aliens beyond the removal period" helps explain the process for removal and states that certain ICE officials have the "authority to continue an alien in custody or grant release or parole" based upon enumerated factors. 8 C.F.R. § 241.4(a). Notably, the regulations state that a copy of any decision by the "Executive Associate Commissioner," the "district director," or the "Director of the Detention and Removal Field Office" "to release or to detain an alien shall be provided to the detained alien," and any such detention decision must "briefly set forth the reasons for the continued detention." 8 C.F.R. § 241.4(d). To be put on an OSUP, the noncitizen must "demonstrate [] to the satisfaction of the Attorney General . . . that his or her release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending such [noncitizen's] removal." 8 C.F.R. § 241.4(d)(1).

Another section relevant to the Court's analysis relates to a noncitizen "who has been released under an order of supervision or other conditions of release" and then "violates the conditions of release may be returned to custody." 8 C.F.R. § 241.4(*l*)(1). The regulation states, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," and then "[t]he alien will be afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id*. Absent the noncitizen's violation of their conditions of release, in very limited circumstances, certain ICE officials have the "authority, in the exercise of discretion, to revoke release and return to [ICE] custody an alien previously approved for release under the

3

procedures in this section." 8 C.F.R. § 241.4(*l*)(2). The statute provides four circumstances where this is appropriate:

> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*Id.*

These regulations are still limited by the Constitution. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) (holding that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.")

Lastly, the Court must also look at 8 C.F.R. § 241.13. which cross references 8 C.F.R. § 241.4. In full, 8 C.F.R. § 241.13(a) states:

> This section establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future.

8 C.F.R. § 241.13(a).

This section only applies when it has been a determined that "there is no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1). If that occurs, ICE may revoke that release upon either a violation or if "changed circumstances" have led to a determination that "that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1), (2). If ICE intends to revoke this release, they must do the following: (1) "[u]pon revocation, the alien will be notified of the reasons for revocation"; (2) ICE "will conduct an initial informal interview promptly after. . . return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification"; and (3) allow that "[t]he alien may submit any evidence or information" to

4

demonstrate there is no "significant likelihood" of removal in the "reasonably foreseeable future," or that the noncitizen "has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).

### B.    Application to Castro

Castro contends, among other things, that her detention violates the Administrative Procedure Act and her Fifth Amendment right to Due Process because ICE revoked her OSUP without notice or "an opportunity to be respond" in violation of 8 C.F.R. §§ 241.4(1), 241.13(i), and the U.S. Constitution. [DE 1 at 3-5].

In the *United States v. Accardi*, the Supreme Court held that when the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." 347 U.S. 266, 268 (1954). This also applies to agencies' own internal manuals. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974). To prove an *Accardi* claim, and a violation of Due Process, the claimant must also "demonstrate prejudice resulting from the violation." *Am. Farm Liens v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970). But prejudice may be presumed when "compliance with the regulation is mandated by the Constitution" and "where an entire procedural framework, designed to insure the fair processing of an action affecting an individual is created but then not followed by an agency." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986).

Respondents state that Castro has no entitlement to the notice and interview requirements of 8 C.F.R. § 241.4(*l*)(1) because her OSUP was revoked instead under 8 C.F.R. § 241.4(*l*)(2), "which has no such requirements" compared to 8 C.F.R. § 241.4(*l*)(1). [DE 7 at 32]. In the alternative, Respondents state that "notice was served" upon Castro, when ICE provided the order revoking the OSUP and "[Castro] refused to sign the proof of service." [*Id.*].

But Respondents cite no authority for this proposition and the Court can find none. In fact, the caselaw in both the Sixth Circuit and across the country is directly to the contrary. The United

States argues that ICE must follow certain procedures if it revokes a noncitizen's release pursuant to (*l*)(1) but not to (*l*)(2). Yet, (*l*)(2) overlaps with (*l*)(1) with respect to the circumstances when a violation results from a condition of the OSUP as the basis for revoking release. "This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal." *Zhu v. Genalo* 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025). In *Ceesay v. Kurzdorfer*, the court held the same, stating that it "does not make sense" for (*l*)(2) and (*l*)(1) to "provide two entirely different tracks for revocation." 781 F. Supp. 137, 164 n. 25 (W.D.N.Y. 2025). And although Castro has the "ultimate burden" of proving entitlement to habeas relief, the "regulations at issue in this case place the [initial] burden on ICE." *Ahmed v. Olson,* 2026 WL 836123, at *4 (E.D. Ky. Mar. 26, 2026) (quoting *Roble v. Bondi,* 803 F. Supp. 3d 766, 772 (D. Minn. 2025).

ICE's contention that merely stating "notice was served" with "boiler plate language" is insufficient to give proper notice. *Ahmed,* 2026 WL 836123, at *4; *Vu Quoc Pham v. Warden et al.*, 2026 WL 673404, at *9 (E.D. Cal. Mar. 10, 2026) (holding that a Notice which only states that circumstances have changed is "vague and conclusory because it does not provide any information regarding the changed circumstances and how the changed circumstances made petitioner's removal significantly likely in the reasonably foreseeable future"); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. June 20, 2025) ("Respondents did not identify any facts to support that ICE re-detained [the petitioner] based on changed circumstances that would show [her] removal to be significantly likely in the reasonably foreseeable future.");

Moreover, in *Zhen v. Doe*, the Court found that although petitioner's release was revoked pursuant to (*l*)(2) there are certain procedural requirements when revoking supervision pursuant to § 241.4, "including "notif[ying] [her] of the reasons for [the] revocation [and] . . . her return to [ICE] custody," and "afford[ing] her an opportunity to respond to the reasons for revocation stated

6

in the notification," 2025 WL 2258586 at *10 n.19 (N.D. Ohio Aug. 7, 2025) (quoting *Jimenez v. Cronen*, 317 F.Supp. 3d 626, 652 (D. Mass. 2018)). Also, the United States' own actions in other jurisdictions also belie their arguments. In *Barrios v. Ripa*, the United States effectuated re-detention of a noncitizen pursuant to (*l*)(2) and promptly "afforded an informal interview." 2025 WL 2280485, at *2 (S.D. Fla. Aug. 8, 2025). This was not the only case or jurisdiction where the United States has done this. *See, e.g., Medina v. Noem*, 794 F. Supp. 3d 365, 381-82 (D. Md. 2025); *Tanha v. Warden, Baltimore Detention Facility*, 2025 WL 2062181, at *1-2 (D. Md. July 22, 2025); *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 225-26 (D. Mass. 2025). The plain text necessitates that any re-detention under Section 241.4 requires notice and informal interview, because "courts should give " 'every clause and word of a statute' ... meaning." *Giraud*, 795 F. Supp. 3d at 580 (quoting *United States ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 432 (2023)).

The United States has conceded that it did not provide Castro with required procedural protection thus violated her procedural due process rights. This contradicts the plain text of Section 241.4(*l*)(1) which directly provides that the noncitizen will be notified of the reasons for their revocation "upon revocation." 8 C.F.R. § 241.4(*l*)(1). And that the noncitizen would be afforded an initial interview "promptly." 8 C.F.R. § 241.4(l)(1). By failing to do these actions, ICE has necessarily "violate[d] due process because it thwarts [petitioner's] ability to contest that action." *Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025); *Waldron v. Immigr. & Naturalization Serv.,* 17 F.3d 511, 518 (2d Cir. 1993) (holding that failing to follow certain Immigration regulations violated due process when the regulations were "promulgated to protect a fundamental right derived from the Constitution."); *Choy v. Woosley,* 2026 WL 324601, at *6 (W.D. Ky. Feb. 6, 2026) ("[t]his failure prejudiced [Petitioner] and violated her due process rights by denying her an opportunity to respond.")

Additionally, as referenced above, it is permissible that Castro was subject to 8 C.F.R. § 241.13. Based upon the Immigration Judge's finding that Castro has a reasonable fear of returning to Nicaragua and be placed in withholding only proceedings to allow for a full hearing, her removal is not imminent. And thus, there is "no significant likelihood of removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(a), (b)(1); *see K.E.O. v. Woosley,* 2025 WL 2553394, *6 (W.D. Ky. Sept. 4, 2026) (holding the same). If applicable, those regulations *also* require that the noncitizen "be notified of the reasons for revocation" and that ICE will "will conduct an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

As a result, ICE has violated their own regulations and thus, violated Castro's Fifth Amendment Right to Due Process. *Choy*, 2026 WL 324601, at *6 (holding the same); *Zhu*, 798 F. Supp. 3d at 413 (holding that "ICE's failure to follow its own regulations and provide Petitioner with notice or an interview violated Petitioner's procedural due process rights.").

The Court acknowledges that the United States has broad discretion to enforce immigration laws and, possibly, to revoke Petitioner's Order of Supervision. But it must follow the law and give every word in the applicable statutes and regulations their full meaning. This includes both the "requirements of its own regulations and the Due Process Clause." *Zhu,* 798 F. Supp. 3d at 419. In this instance, ICE and the United States failed to do so, and thus violated their own regulations and the due process clause. *K.E.O.,* 2025 WL 2553394, at *6.

"Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). "Habeas has traditionally been a means to secure *release* from unlawful detention." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (emphasis in original). Courts across the country have

8

ordered the release of individuals stemming from ICE's illegal detention in violation of their own regulations. *R.O.A. v. Lewis,* 2025 WL 4708612, at *2 (W.D. Ky. Dec. 18, 2025); *Ahmed,* 2026 WL 836123, at *6 ("this Court finds that the only appropriate remedy is immediate release pursuant to the conditions of Petitioner's preexisting OSUP"); *Roble*, 803 F. Supp. 3d at 772 (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"); *Rombot v. Souza*, 296 F.Supp. 3d 383, 389 (D. Mass. 2017) (finding that because ICE's detention failed to follow due process, the court ordered release "pursuant to the conditions in [petitioner's] preexisting Order of Supervision.") Accordingly, Petitioner must be released.[2]

### III.    Conclusion

For the reasons stated above, ICE's failure to follow their own regulations violate the *Accardi* doctrine and Castro's procedural due process rights. The Court **GRANTS** Castro's Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** her immediate release upon the conditions of OSUP. The United States is directed to immediately release Castro from custody; and further, to certify compliance with the Court's order by a filing on the docket no later than **May 29, 2026.**

Rebecca Grady Jennings, District Judge
United States District Court

May 28, 2026

---

[2] Given Castro's release, the Court "need not address whether Petitioner's redetention violates the *Zadvydas* standard based on the likelihood that Petitioner's removal is not reasonably foreseeable." *Zhu,* 798 F. Supp. 3d at 415; *see also Orellana,* 2025 2444087 at *8 (granting habeas relief pursuant to an *Accardi* violation and not reaching whether detention was unlawful pursuant to *Zadvydas*).